IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PERCY LEROY WILSON | § | |
|    TDCJ-CID #621089 | § | |
| v. | § | C.A. NO. C-08-041 |
| | § | |
| JOEL PEREZ, ET AL. | § | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this § 1983 civil rights action, plaintiff claims that defendants were deliberately indifferent to his serious medical needs. (D.E. 1). Defendants Deborah Sugarek, James Fitts, and Donna Randall move for summary judgment on the grounds that plaintiff has failed to exhaust his administrative remedies, qualified immunity, and Eleventh Amendment Immunity. (D.E. 47).[1] Plaintiff has also moved for summary judgment. (D.E. 49). For the reasons stated herein, the defendants' motion for summary judgment is hereby GRANTED.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the parties, (D.E. 7, 39, 62), this case was reassigned to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 71); see also 28 U.S.C. § 636(c).

## II. BACKGROUND

Plaintiff is in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and at all times relevant to the facts of this lawsuit was incarcerated at the McConnell Unit in Beeville, Texas, although he is currently incarcerated at

---

[1] Defendant Joel Perez advised the Court that he would not file a dispositive motion. (D.E. 59). Thus, plaintiff's claims against him will proceed to trial.

the Stiles Unit in Beaumont, Texas. He filed suit on February 1, 2008, naming as defendants: (1) Officer Jonathan A. Perez; (2) Dr. James M. Fitts; (3) Donna Randall; and (4) Officer Deborah Sugarek.[2] (D.E. 12, at 1). He claimed that Officer Perez used excessive force against him, and that Officer Sugarek, Dr. Fitts, and Nurse Randall were deliberately indifferent to his serious medical needs following the assault. (D.E. 1); (D.E. 12).

On September 29, 2008, plaintiff filed a motion to correct mistaken identity as to Officer Jonathan A. Perez. (D.E. 57). The Court construed the filing as a motion to substitute Officer Joel J. Perez as a defendant in place of Officer Jonathan A. Perez, and granted the motion on September 29, 2008. (D.E. 63).

On August 18, 2008, defendants filed the instant motion for summary judgment. (D.E. 47). On August 22, 2008, plaintiff filed his cross-motion for summary judgment. (D.E. 49).

### III. SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the following:

Ex. A: Grievances filed by plaintiff;

Ex. B: Affidavit of Officer Sugarek;

Ex. C: Major Use of Force Report;

Ex. D: Affidavit of Dr. Adams, an expert witness;

Ex. E: Affidavit of Nurse Brysch, an expert witness; and

Ex. F: Plaintiff's medical records.

(D.E. 47 , Exs. A-F).

---

[2] Although plaintiff spelled her name "Sugarel" in his complaint, (D.E. 12), subsequent filings have clarified that the defendant's name is spelled "Sugarek." (D.E. 47).

2

The following facts are not in dispute:

On October 8, 2006, at approximately 12:00 p.m., Officer Perez was picking up lunch trays in plaintiff's cell block. (D.E. 47, Ex. C, at 13). Upon collecting plaintiff's tray, following some exchange between himself and plaintiff, Officer Perez swung down with the tray slot bar, striking plaintiff's right hand. Id. Officer Perez went to the control picket and told Officer Sugarek about the incident, who in turn went to plaintiff's cell. (D.E. 47, Ex. B, at 1). Upon her return to the picket, Officer Sugarek informed her supervisor, Lieutenant Gallegos, of the incident. Id.; (D.E. 47, Ex. C, at 13-14).

Lieutenant Gallegos ordered Sergeant Eric Lang to report to the site of the incident. (D.E. 47, Ex. C, at 13-14). Sergeant Lang arrived, accompanied by Officer Juan Benavides, Officer Jaime Alvarado, and Officer Savannah McCumber. (D.E. 47, Ex. C, at 14). Officer McCumber operated a video camera. Id. at 17. Upon arriving, Sergeant Lang gave a brief synopsis of what happened for the camera, after which Officers Benavides and Alvarado prepared to escort plaintiff to the medical building. Id. at 20. Plaintiff was escorted to the medical building, still accompanied by Sergeant Lang and Officer McCumber, who continued to run the video camera. Id. At the medical building, still pictures were taken of plaintiff's injury. Id. at 30. At one point, the video camera was turned off to conserve battery power, but it was turned back on as soon as the on-duty doctor arrived. Id.

Plaintiff's right ring finger was sutured and a follow-up appointment at Hospital Galveston was recommended in light of a possible fracture. (D.E. 47, Ex. F, at 4). On October 9, 2006, plaintiff was seen in the emergency room at Hospital Galveston, where he was diagnosed with a fracture in his right ring finger. Id. at 5. He had pins placed in his finger. Id.

at 9. It was recommended that he wear a splint at all times, and he was medically unassigned. Id. at 7. He was also prescribed pain medication. Id. at 18.

On October 23, 2006, plaintiff requested antibiotics and pain medication. Id. at 39. On October 27, 2006, he was prescribed Keflex and Tylenol 3. Id. at 47. That same day, he renewed his request for antibiotics and pain medication. Id. at 48. Dr. Garcia noted that antibiotics were reordered on October 28, 2006 and that pain medication had been ordered through November 1, 2006. Id.

On November 6, 2006, plaintiff requested a medical appointment because an old injury to his collarbone was causing him discomfort, he had constant pain in his right hand, he wanted to receive the flu vaccine, and he needed his bandages changed. Id. at 25-29. He was notified that an appointment had been scheduled, and that he would receive the flu vaccine when some became available. Id. On November 8, 2006, plaintiff was seen by the physician's assistant, Samuel Kovalski, who prescribed Ibuprofen, removed plaintiff's sutures, changed the dressings to his wounds, and recommended a follow-up for him to have his pins removed. Id. at 32. On November 8, 2006, plaintiff again requested an appointment due to pain in his right hand. Id. at 33. On November 9, 2006, Nurse Randall noted that he had been seen on November 8, 2006. Id.

On November 16, 2006, plaintiff was seen by Dr. Fitts, who noted that he was status post- pin removal in his right hand. Id. at 59. Dr. Fitts recommended range of motion exercises, continued use of the splint, and Ibuprofen for pain. Id. Nurse Randall provided bandages and other medical supplies to plaintiff. Id. at 62. On November 28, 2006, plaintiff requested a medical appointment, complaining of pain in his right hand and wrist. Id. at 64. He claimed that

4

he had not refused to attend a scheduled follow-up on November 28, 2006, but had been concerned because Officer Perez was working in the pod that day. Id. He was subsequently rescheduled for his follow-up visit. Id. Plaintiff again missed his follow-up on December 1, 2006, and was rescheduled. Id. at 68.

On December 11, 2006, plaintiff requested a medical appointment due to pain in his right hand. Id. at 77. He complained that his pain medication was not helping much, and requested other pain medication. Id. He was scheduled for a clinic visit on December 15, 2006, but missed that appointment because nobody was available to escort him. Id. at 79. His appointment was rescheduled. Id. On December 18, 2006, he was seen by Dr. Fitts, who recommended continued use of Ibuprofen for pain. Id. at 81. On January 3, 2007, plaintiff requested another medical appointment, again complaining of pain in his right hand. Id. at 82. On January 5, 2007, he was again seen by Dr. Fitts, who continued him on Ibuprofen and told him he might always have some pain in his right hand from his injuries. Id. at 84. On January 15, 2007, plaintiff again complained of severe pain in his wrist and hand. Id. at 87. However, on January 18, 2007, he indicated that he was refusing medical assistance for his ring finger pain. Id. at 88.

On January 22, 2007, plaintiff again requested medical treatment, indicating that the escorting officer had fabricated his January 18 refusal. Id. at 92. He was scheduled for an appointment. Id. Mr. Kovalski saw him on January 24, 2007, and recommended a follow-up at Hospital Galveston in three to four weeks. Id. at 93. On January 29, 2007, plaintiff complained that Mr. Kovalski had mistakenly lowered his prescribed Ibuprofen dose from 800 to 600 milligrams per day. Id. at 98. Dr. Fitts continued plaintiff on 600 milligrams. Id. at 101.

On February 5, 2007, plaintiff complained again of pain in his wrist and hand. Id. at 100. On February 8, 2007, he saw Dr. Fitts, who continued him on Ibuprofen, discontinued use of the splint, and recommended range of motion exercises. Id. at 101. On February 12, 2007, Dr. Fitts again examined plaintiff, and placed him back on 800 milligrams of Ibuprofen. Id. at 104. On February 12, 2007, plaintiff informed medical staff that he was still experiencing pain in his wrist and hand and that he believed Nurse Randall was placing his life in danger with her "involvement" with Officer Perez. Id. at 109. On February 19, 2007, plaintiff claimed that he had been scheduled to have his finger amputated. Id. at 112. On February 21, 2007, plaintiff was seen by Dr. Fitts, who again recommended range of motion exercises.

Plaintiff filed a number of grievances in this matter. On October 19, 2006, he filed a Step 1 grievance asserting that he was in fear for his life and describing the actions of Officer Perez in striking him with the tray slot bar. (D.E. 47, Ex. A, at 23). He was informed that the proper unit officials had been made aware of his allegations against Officer Perez, and his grievance had been placed in the use of force packet. Id. at 24. On November 27, 2006, plaintiff filed a Step 2 grievance, again alleging that his life was in danger, that Officer Perez had fabricated a disciplinary charge against plaintiff to cover up the attack, and that other officers were depriving him of his meals in retaliation. Id. at 21-22. On December 15, 2006, plaintiff was informed that no evidence supported his claim that his life was in danger from the unit staff.

On March 15, 2007, plaintiff filed a Step 1 grievance against Nurse Randall and Dr. Fitts, alleging that they had deprived him of medical treatment and were participating in a conspiracy to cover up the assault by Officer Perez by falsifying his medical records. Id. at 19-20. On April 16, 2007, he received a response informing him that neither Dr. Fitts nor Nurse Randall were

6

conspiring against him and that all care had been adequate and appropriate. Id. at 20. On April 18, 2007, plaintiff filed a Step 2 grievance, again alleging that Dr. Fitts and Nurse Randall had deprived him of medical care, specifically his scheduled amputation at Hospital Galveston. Id. at 17-18. He also repeated his assertions that Dr. Fitts and Nurse Randall had falsified his medical records in a conspiracy to cover up for Officer Perez. Id. On April 30, 2007, plaintiff received a response informing him that the review corroborated the Step 1 findings. Id. at 18.

## IV.  DISCUSSION

**A.      Summary Judgment Standard Of Review.**

Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Courts must consider the record as a whole, considering all pleadings, depositions, affidavits, and admissions on file in the light most favorable to the non-movant. Caboni v. General Motors Corp., 278 F.2d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment.  Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

**B.    Official Capacity Claims And Injunctive Relief.**

Plaintiff has sued defendants in their official and individual capacities for money damages.  A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985).  The Eleventh Amendment bars a suit for money damages against a state or state agency.  See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).  A judgment may not be entered against a state officer in his official capacity for violating federal law in the past.  Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

To the extent plaintiff is suing defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment, and they are dismissed.

**C.    Plaintiff Failed To Properly Exhaust His Administrative Remedies Concerning His Claim Against Officer Sugarek.**

Defendants move for summary judgment as to Officer Sugarek on the grounds that plaintiff failed to exhaust his administrative remedies with respect to his claims against her.

(D.E. 47, at 4-6). Defendants argue that plaintiff failed to adequately identify Officer Sugarek in any of his grievances. Id.

Prisoners are required to exhaust prison grievance procedures before filing suit in federal court. 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 914 (2007); Woodford v. Ngo, 548 U.S. 81, 85 (2006). The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. Porter v. Nussle, 534 U.S. 516, 532 (2002); accord Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. Booth v. Churner, 532 U.S. 731, 734 (2001); accord Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

The TDCJ provides a two-step procedure for presenting administrative grievances.[3] A prisoner must pursue his grievance at both the Step 1 and Step 2 levels in order to exhaust his administrative remedies. See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004) (citing Wright, 260 F.3d at 358).

The purpose of the exhaustion requirement is to alert prison officials of problems so that the prison has a chance to address the claims before they reach federal court. Woodford, 548 U.S. at 94. As acknowledged by the Supreme Court, Congress intended the administrative

---

[3] Step 1 requires the prisoner to submit an administrative grievance at the institutional level. Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy, ¶ IV (Jan. 31, 1997)). After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator. Id. Step 2 permits the prisoner to submit an appeal to the division grievance investigator with the TDCJ-CID. Id. After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for Step 2 of the process, which is the director, deputy director, regional director, or assistant director. Id.

process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding." Booth, 532 U.S. at 737.  As a practical matter, this approach will frequently require that the grievance identify the individuals connected with the problem.  See Johnson, 385 F.3d at 522.

Here, plaintiff's grievances describe only Officer Perez's actions in hitting him with the tray-slot bar, and vaguely refer to other staff conspiring to "cover up" for Officer Perez's actions. See (D.E. 47, Ex. A).  Nowhere in his grievances does plaintiff complain that he was ignored, or mistreated, immediately following his injury.  His grievances do not allege that there was any delay in affording him treatment immediately after the assault.  There is nothing in his grievances that would alert prison officials to any problem with Officer Sugarek's actions immediately following his injury.  Thus, plaintiff has failed to exhaust his administrative remedies with respect to Officer Sugarek, and his claim against her is denied.

**D.      Defendants Are Entitled To Qualified Immunity.**

Plaintiff alleges that Officer Sugarek acted with deliberate indifference to his serious medical needs because after he was assaulted by Officer Perez she came to his cell and stared at him, ignoring his pleas for help.  (D.E. 12, at 4).  He alleges that Dr. Fitts and Nurse Randall acted with deliberate indifference to his serious medical needs because they falsified his medical records and denied him medical treatment at Hospital Galveston.  Id.

Defendants move for summary judgment on the grounds of qualified immunity.  The qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'"  Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003)

(quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)). The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established – that is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. at 624 (quoting Price, 256 F.3d at 369). Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

      **1.**      **Step 1: Constitutional Violation.**

The Supreme Court has held that "[d]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976). In order to state a claim of inadequate medical treatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.

A disagreement with the level and type of treatment is not actionable under the Eighth Amendment. See id. at 107; Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) (per curiam); Young v. Gray, 560 F.2d 201, 201 (5th Cir. 1977) (per curiam). An incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met. Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 755 (5th Cir. 2001). A "plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Id.

11

(quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)).  However, delay in treatment may be actionable under § 1983 if there has been deliberate indifference and the delay results in substantial harm.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999) (no substantial delay).

The uncontroverted evidence in this case – that is, plaintiff's medical records and the major use of force report – establishes that defendants were not deliberately indifferent to plaintiff's serious medical needs.  The major use of force report indicates that Officer Sugarek quickly informed a supervisor, Lieutenant Gallegos, of the incident between plaintiff and Officer Perez.  (D.E. 47, Ex. C, at 13-14).  Plaintiff was immediately escorted to medical facility where his laceration was treated, and then moved to Hospital Galveston where he was treated for his fracture.  (D.E. 47, Ex. C).  Even if plaintiff could establish that Officer Sugarek lingered at his cell before summoning medical help, he has provided no evidence that such a delay caused him any injury.  A plaintiff must show more than a de minimis injury in order to state a claim under § 1983.  Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (citing Hudson v. MacMillan, 503 U.S. 1, 10 (1992)).  Thus, plaintiff has failed to establish that Officer Sugarek was deliberately indifferent to his serious medical needs.

The medical records establish that Dr. Fitts and Nurse Randall were not deliberately indifferent to plaintiff's serious medical needs.  Plaintiff's injury was immediately treated with surgery and sutures.  (D.E. 47, Ex. F, at 4-7.)  His arm was splinted and he was medically unassigned.  Id.  His sutures and pins were removed at appropriate times.  (D.E. 47, Ex. F, at 32-49).  He received pain medication when he requested it and saw the orthopedic specialists when necessary.  (D.E. 47, Ex. F).  In fact, the medical records indicate that plaintiff's finger was

improving; he had been taken off the splint and was recommended to engage in range of motion exercises. (D.E. 47, Ex. F, at 59). Nothing in his medical records indicates that plaintiff was scheduled for an amputation, and plaintiff provides nothing more than conclusory allegations that defendants falsified his medical records to support his claim. (D.E. 12). Where the medical records show that a prisoner's medical complaints were assessed and treated, there is no deliberate indifference. See McCord v. Maggio, 910 F.2d 1248, 1251 (5th Cir. 1990). The plaintiff has failed to allege a constitutional violation on the part of defendants Fitts and Randall, and they are entitled to qualified immunity.

### 2. Step Two: Objective Reasonableness.

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, when the plaintiff fails to state a constitutional violation, as in this case, the Court need not examine whether the defendants' actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate). In this case, plaintiff has failed to establish the violation of a constitutional right. Accordingly, all three defendants are entitled to qualified immunity on plaintiff's claims of deliberate indifference to serious medical needs.

In the alternative, under the second step of the qualified immunity analysis, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [prison official] that his conduct was unlawful in the situation he

confronted." Id. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)).  Here, defendants provided prompt, adequate, and appropriate medical care to plaintiff following his October 8, 2006 injury, and thereafter.  He was examined multiple times, he was prescribed pain medication, his fracture was treated with surgery and splinting, and he was medically unassigned.  Moreover, his sick call requests were timely answered, he was provided with keep-on-person medication passes, and he was never turned away from the infirmary.  When he refused treatment or missed appointments, he was rescheduled.  His complaints were not ignored.  Defendants' conduct was reasonable.  Accordingly, they are entitled to qualified immunity.

## V.  CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment, (D.E. 47), is GRANTED.  Plaintiff's claims for money damages against defendants in their official capacities are barred by the Eleventh Amendment, and defendants are granted summary judgment in their favor dismissing those claims.  Defendants are granted summary judgment in their favor on plaintiff's claim of deliberate indifference.  Plaintiff's claims against defendants in their individual capacities for money damages and in their official capacities for injunctive relief are dismissed with prejudice.  A scheduling order will be issued with a trial date for plaintiff's claims against defendant Joel Perez.

ORDERED this 10th day of November 2008.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE